**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MESA UNDERWRITERS SPECIALTY** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:23-CV-02649-X** |
| | § | |
| **USAPD, LLC d/b/a USA PATROL** | § | |
| **DIVISION, ET AL.** | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANT UNIVERSAL PROTECTION SERVICE, LP D/B/A**
**ALLIED UNIVERSAL SECURITY SERVICES' BRIEF IN**
**SUPPORT OF ITS RESPONSE TO PLAINTIFF'S MOTION FOR**
**SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant Universal Protection Service, LP d/b/a Allied Universal Security Services ("Defendant" or "Allied") and files this Brief in Support of its Response to Plaintiff Mesa Underwriters Specialty Insurance Company's ("MUSIC" or "Plaintiff") Motion for Summary Judgment[1] and its Cross-Motion for Summary Judgment. Allied respectfully would show the Court as follows:

---

[1] *See* Pl.'s Mot. Summ. J. (ECF No. 36); Pl's Mot. Summ. J. Br. (ECF No. 37).

## TABLE OF CONTENTS

I.     SUMMARY OF THE ARGUMENT ................................................................................ 1

II.    SUMMARY JUDGMENT EVIDENCE ........................................................................... 2

III.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ......................................... 2

       A.     Underlying Lawsuit ............................................................................ 2

       B.     USAPD-Allied Contract ..................................................................... 3

       C.     The MUSIC Policy .............................................................................. 3

       D.     MUSIC'S Motion ................................................................................ 6

IV.    ARGUMENTS AND AUTHORITIES ............................................................................. 7

       A.     Standard of Review and Burden of Proof ....................................... 7

       B.     The Duty to Defend Standard ......................................................... 7

       C.     A Duty to Defend is Owed under the Policy .................................. 9

              1.     Coverage is available under the Policy for the claims asserted
                     against Allied in the Underlying Lawsuit. .................................. 9

                     a.     Allied qualifies as an "Insured" under the Policy. ................... 10

                     b.     The claims asserted against Allied in the Underlying
                            Lawsuit are for damages because of a "bodily injury"
                            that was caused by an "occurrence" and took place in
                            the "coverage territory" during the policy period. ................. 11

              2.     The Exclusion does not negate the duty to defend because it is
                     ambiguous as a matter of law. ................................................. 12

                     a.     The Endorsement is ambiguous as a matter of law,
                            because the meaning of "all locations" is uncertain or
                            doubtful. ................................................................................ 12

                     b.     Further, a reasonable interpretation is that it only
                            applies to limit coverage with respect to bodily
                            injuries that occur at USAPD's Corporate Office such that the
                            exclusion does not apply. ...................................................... 15

       D.     The Duty to Indemnify is not Ripe ............................................... 18

       E.     MUSIC Violated the Prompt Payment of Claims Act ................... 19

       F.     Attorneys' Fees under the CPRC. ................................................. 20

V.     CONCLUSION AND PRAYER .................................................................................. 20

## **TABLE OF AUTHORITIES**

**Federal Cases**

*American Western Home Insurance Co. v. Israel,*
   747 F. Supp. 2d 785 (S.D. Tex. 2010) ................................................................. 14

*Angell v. GEICO Advantage Ins. Co.,*
   67 F.4th 727 (5th Cir. 2023) ............................................................................. 19

*Bitco General Insurance Corp. v. Monroe Guaranty Insurance Co.,*
   31 F.4th 235 (5th Cir. 2022) ............................................................................. 13

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ........................................................................................... 7

*Century Surety Co. v. Club Adventure Learning Center LLC,*
   Cause No. EP-22-CV-213-KC, 2023 WL 3575647 (W.D. Tex. May 22, 2023) .................... 18

*Charter Communications, Inc. v. Prewitt Management, Inc.,*
   No. 1:16-CV-1268-LY, 2023 WL 3859027 (W.D. Tex. Apr. 28, 2023) ................................. 17

*Colony National Insurance Co. v. United Fire & Casualty Co.,*
   677 F. App'x 941 (5th Cir. 2017) ........................................................................ 8

*Gore Design Completions, Ltd. v. Hartford Fire Insurance Co.,*
   538 F.3d 365 (5th Cir. 2008) ........................................................................... 8, 9

*Great Am. Ins. Co. v. AFS/IBEX Fin. Services, Inc.,*
   No. CIV. A. 307-CV-924-O, 2008 WL 2795205 (N.D. Tex. July 21, 2008) ................ 7, 16, 18

*Guaranty National Insurance Co. v. Vic Manufacturing Co.,*
   143 F.3d 192 (5th Cir. 1998) ............................................................................. 7

*Indian Harbor Insurance Co. v. KB Lone Star, Inc.,*
   No. H-11-CV-1846, 2012 WL 3866858 (S.D. Tex. Sept. 5, 2012) ................................. 8

*International Insurance Co. v. RSR Corp.,*
   No. CIV.A. 300CV0250P, 2002 WL 493121 (N.D. Tex. Mar. 27, 2002) ......................... 7, 12

*Kent Distributors, Inc. v. Travelers Casualty & Surety Co. of America,*
   No. MO:22-CV-00221-DC-RCG, 2023 WL 6536245 (W.D. Tex. Aug. 3, 2023) ............. 13, 16

*Lafarge Corp. v. Hartford Casualty Insurance Co.,*
   61 F.3d 389 (5th Cir. 1995) ............................................................................... 8

*Lawyers Title Insurance Corp. v. Doubletree Partners, L.P.,*
   739 F.3d 848 (5th Cir. 2014) ........................................................................... 7, 15

*Liberty Mutual Fire Insurance Co. v. Copart of Connecticut, Inc.,*
   75 F.4th 522 (5th Cir. 2023) .............................................................................. 1

*Manny G. Motors, LLC v. Universal Underwriters Insurance Co.,*
   No. 5:17-CV-565-OLG, 2018 WL 2251366 (W.D. Tex. Jan. 26, 2018) .............................. 13

*Mid-Continent Casualty Co. v. JHP Development, Inc.*,
  557 F.3d 207 (5th Cir. 2009) ................................................................................. 8

*Northfield Insurance Co. v. Loving Home Care, Inc.*,
  363 F.3d 523 (5th Cir. 2004) ................................................................................. 8

*Penn-America Insurance Co. v. Tarango Trucking, LLC*,
  30 F.4th 440 (5th Cir. 2022) ............................................................................... 18

*Royal St. Louis, Inc. v. United States*,
  578 F.2d 1017 (5th Cir. 1978) ............................................................................. 13

*Sustainable Modular Management, Inc. v. Travelers Lloyds Insurance Co.*,
  No. 3:20-CV-1883-D, 2022 WL 2134022 (N.D. Tex. June 14, 2022).................... 12

*Tasacom Real Estate, LLC v. Associated Industries Insurance Co. Inc.*,
  Civ. A. No. 3:23-CV-1687-X, 2024 WL 3635519 (N.D. Tex. June 18, 2024) ........ 14

*Utica Mutual Insurance Co. v. Hanover Insurance Co.*,
  No. 3:23-CV-2306-D, 2024 WL 4703089 (N.D. Tex. Nov. 5, 2024) ...................... 13

**State Cases**

*Central Mutual Insurance Co. v. Reliance Property Management, Inc.*,
  No. 05-21-00071-CV, 2022 WL 1657031 (Tex. App.—Dallas May 25, 2022, pet. denied)... 13

*Coker v. Coker*,
  650 S.W.2d 391 (Tex. 1983)................................................................................... 7

*Great American Insurance Co. v. Primo*,
  512 S.W.3d 890 (Tex. 2017) ................................................................................ 13

*GuideOne Elite Insurance Co. v. Fielder Road Baptist Church*,
  197 S.W.3d 305 (Tex. 2006)............................................................................ 8, 11

*Heyden Newport Chemical Corp. v. Southern General Insurance Co.*,
  387 S.W.2d 22 (Tex. 1965)..................................................................................... 8

*King v. Dallas Fire Insurance Co.*,
  85 S.W.3d 185 (Tex. 2002).................................................................................. 12

*Lamar Homes, Inc. v. Mid-Continent Casualty Co.*,
  242 S.W.3d 1 (Tex. 2007)..................................................................................... 19

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc.*,
  811 S.W.2d 552 (Tex. 1991)................................................................................. 16

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*,
  939 S.W.2d 139 (Tex. 1997)................................................................................... 8

*URI, Inc. v. Kleberg Cnty.*,
  543 S.W.3d 755 (Tex. 2018).................................................................................. 17

*Zurich America Insurance Co. v. Nokia, Inc.*,
  268 S.W.3d 487 (Tex. 2008)................................................................................... 8

**Statutes**

Tex. Civ. P. & Rem. Code § 38.001 .......................................................................... 20

Tex. Ins. Code Ann. § 542.060 ................................................................................. 19

Texas Ins. Code Ann. § 554.002 ................................................................................ 7

# I. SUMMARY OF THE ARGUMENT

In MUSIC's Motion for Summary Judgment (the "Motion"), MUSIC argues that it has no duty to defend or indemnify Allied from the claims asserted against Allied in the Underlying Lawsuit.[2] In doing so, MUSIC relies solely on the application of an Assault or Battery Exclusion (the "Exclusion") in Commercial General Liability Policy No. MP0042018003294, issued by MUSIC to Defendant USAPD, LLC d/b/a USA Patrol ("USAPD") (the "Policy").[3] Specifically, MUSIC argues that the Exclusion precludes coverage for the underlying claims asserted against Allied because "the claims asserted by [the underlying plaintiff] Orta fall squarely within the scope of the Assault or Battery Exclusion."[4] However, MUSIC ignores the fact that the Exclusion's plain language states that it only applies to limit coverage with respect to bodily injuries that occur at specific locations. Although the Exclusion states it applies to "all locations," it fails to clarify what "locations" are included in that phrase. Simply put, applying recognized rules of contract interpretation shows that the meaning of this phrase is unclear or in the alternative, is subject to more than one reasonable interpretation. As a result, the Exclusion is ambiguous as a matter of law and MUSIC's Motion must be denied on the duty to defend. With respect to the duty to indemnify, because a defense is owed in the Underlying Lawsuit, the duty to indemnify simply is not ripe.[5]

Allied also is entitled to judgment as a matter of law on its Cross-Motion for Summary Judgment because there is no genuine dispute as to any material fact that MUSIC *does* owe a duty to defend Allied against the claims asserted against it in the Underlying Lawsuit.

---

[2] The "Underlying Lawsuit" is styled as Cause No. DC-23-13750, *Alicia Orta as Next Friend of C.O., a Minor Child v. Universal Protection Service, LP, et al.*, in the 101st Judicial District Court of Dallas County, Texas.

[3] *See* Pl.'s Mot. Summ. J. Br. at 11–17 (ECF. No. 37).

[4] *Id.* at 11.

[5] *Liberty Mut. Fire Ins. Co. v. Copart of Conn., Inc.*, 75 F.4th 522, 535 (5th Cir. 2023).

## II.    SUMMARY JUDGMENT EVIDENCE

In support of this Response and Cross-Motion, Allied relies on the following summary judgment evidence, which is attached to Plaintiff's Motion as indicated below, and incorporated by reference as if set forth fully herein:

**Exhibit 1:**    Plaintiff's First Amended Petition in the Underlying Lawsuit;[6]
**Exhibit 2:**    MUSIC Policy No. MP0042018003294;[7] and
**Exhibit 3:**    Allied-USAPD Contract.[8]

Under Texas law, the foregoing evidence is the only evidence relevant to the determination of Plaintiff's duty to defend.

## III.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Underlying Lawsuit

In the Underlying Lawsuit, the Underlying Plaintiff, Alicia Orta, as next friend of C.O., a minor child, alleges that, on April 2, 2022, she went to a bus station in Forth Worth, Texas, where Allied had a contract to perform security services work, which Allied had subcontracted to co-defendant USAPD.[9] The Underlying Plaintiff alleges that C.O. intended to take a bus to Dallas, but while at the bus stop, she approached Quincy Neighbors, who she believed to be a police officer in light of him being an armed security guard dressed in uniform.[10] C.O. alleges that Neighbors was hired by USAPD and/or Allied, and she asked him for help in finding the right bus.[11] She alleges he was in the course and scope of his employment at that time.[12] He purportedly

---

[6] App. to Pl.'s Mot. Summ. J. Br. at MUSIC – 0001 – MUSIC 00020 (ECF No. 38). Hereinafter, pages will be referenced by dropping the prefix letters and numbers, *i.e.*, MUSIC – 0001 will be referred to as 1.

[7] *Id.* at 21–86 (ECF No. 38).

[8] *Id.* at 87–97 (ECF No. 38).

[9] *Id.* at 5 (ECF No. 38).

[10] *Id.*

[11] *Id.*

[12] *Id.*

told her he could drive her home after his shift.[13] Thereafter, she got into his car, but C.O. contends that he took her to a secluded park in Fort Worth, where he sexually assaulted her, resulting in her having suffered severe injuries.[14] No allegations exist that C.O. was assaulted in any way at the bus station.

The Underlying Plaintiff asserted claims of negligence against Allied and others that proximately caused C.O. injuries.[15] Because of his past criminal record, the Underlying Plaintiff alleged that Allied and USAPD were negligent in hiring, retaining, and supervising Neighbors.[16] There also are allegations of gross negligence against the defendants.[17]

## B.    USAPD-Allied Contract

Allied had a contract with Forth Worth Transportation Authority to perform security professional and supervisory services, which Allied subcontracted to USAPD.[18] Pursuant to that contract, USAPD had an obligation to obtain general liability insurance coverage and named Allied as an additional insured on such policy. Pursuant to that requirement, Allied sought coverage, including defense and indemnity, from MUSIC with respect to the claims asserted against it in the Underlying Lawsuit.

## C.    The MUSIC Policy

MUSIC issued to USAPD a commercial general liability insurance policy, bearing policy number MP0042018003294 and effective from November 2, 2021, to November 2, 2022.[19] The

---

[13] *Id.*

[14]

[15] *Id.* at 6–14.

[16] *Id.*

[17] *Id.* at 13.

[18] *Id.* at 87–97.

[19] *Id.* at 21–86.

policy provides that MUSIC will "pay those sums that [USAPD] becomes legally obligated to pay because of 'bodily injury.'"[20] The Policy pays for damages because of "bodily injury" caused by an "occurrence" that takes place in the "coverage territory" and that occurs during the policy period.[21]

The Policy includes an endorsement titled "Limited AI – Primary Non-Contributory – Waiver of Subrogation," which provides in relevant part as follows:

> Blanket Additional Insureds - As Required By Contract
>
> A. Subject to the Primary and Non-Contributory provision set forth in this endorsement, SECTION II - WHO IS AN INSURED is amended to include as an additional insured any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" or, to the extent applicable under the Coverage Part to which this endorsement applies, "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your ongoing operations, "your product", or premises owned or used by you;[22]

In addition, the Policy includes the Exclusion by endorsement, which provides in relevant part as follows:

> I. This insurance does not apply to locations specified in the above Schedule for "bodily injury", "property damage", "personal and advertising injury", or medical payments under Coverage C, caused by, arising out of, resulting from, or in any way related to an "assault" or "battery" […].[23]

---

[20] *Id.* at 55.

[21] *Id.*

[22] *Id.* at 50.

[23] *Id.* at 38.

The Excluded Location Schedule (the "Schedule") referenced in the above language is as follows:[24]

### Assault or Battery Exclusion – Excluded Location Schedule
**If no locations are specified below, the Assault or Battery Exclusion applies to ALL locations**

| Loc. # | Address |
|---|---|
|  |  |
|  |  |
|  |  |

Similar to the language providing that "[i]f no locations are specified below […]"appearing at the top of the Schedule, the body of the endorsement contains a provision that provides: "This exclusion applies to all locations if the above Excluded Location Schedule is left blank."[25] Because the Exclusion plainly states that it only applies to limit coverage with respect to "all locations," the scope of this phrase is important. The phrase "all locations," however, is not defined in the Policy.[26] In fact, the Exclusion endorsement is the only place in the entire Policy this phrase is used. Although "all locations" is undefined, the Policy's Declarations do contain a list of numbered locations and addresses similar to that used in the Excluded Location Schedule of the Endorsement. Specifically, the Policy Declarations list premises owned, rented, or occupied by USAPD (the "Declarations Locations") and lists only one location, 13326 Westheimer Rd., Houston, Texas 77077 ("USAPD's Corporate Office"), as "Loc. No. 001":[27]

| Location(s) Of All Premises you Own, Rent or Occupy, Classification & Premium Provided | | | | | | |
|---|---|---|---|---|---|---|
| Code No. | Classification Description | Premium Basis / Exposure* | Rate | | Advanced Premium | |
|  |  |  | Premises / Operations | Products / Comp Ops | Premises / Operations | Products/ CompOps |
| Loc. No. | Street Address | Street Address | City | | State | Zip |
| 001) | 13326 WESTHIEMER RD | | HOUSTON | | TX 77077 | |

---

[24] *Id.*

[25] *Id.* (emphasis added).

[26] *See id.* at 71-74.

[27] *Id.* at 37.

Notably, other than the Excluded Location Schedule, this is the *only place* in the entire Policy that references numbered locations and addresses.[28]

### D.    MUSIC'S Motion

Despite the Exclusion endorsement's plain language stating that it only applies to and limits insurance coverage with respect to "all locations," MUSIC makes no attempt in the Motion to establish that the incident took place at a location included within the scope of that phrase. Instead, MUSIC's Motion simply contains the following conclusory statement "[t]he schedule referenced in the Assault and Battery Exclusion is blank; therefore, it applies to all locations."[29] Presumably, MUSIC does not address what "all locations" means in this context because MUSIC apparently interprets the phrase to mean literally any geographical location in the world (not even just the "coverage territory" of the Policy, which is limited by definition[30]), including the secluded park in Fort Worth where the alleged sexual assault at issue occurred.[31] However, as discussed in greater detail below, because the meaning of "all locations" is uncertain and subject to multiple reasonable interpretations, the Exclusion is ambiguous as a matter of law and the Motion must be denied.

---

[28] *See id.* at 25-90.

[29] *See* Pl.'s Mot. Summ. J. Br. at 8 (ECF No. 37).

[30] App. to Pl.'s Mot. Summ. J. Br. at 67 (ECF No. 38).

[31] *See id.* at 5.

## IV.    ARGUMENTS AND AUTHORITIES

### A.    Standard of Review and Burden of Proof

In an insurance case, the insurer bears the burden of establishing that an exclusion or limitation in the policy applies to limit or preclude coverage.[32] All exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured.[33]

"The Federal Rules of Civil Procedure have [...] authorized motions for summary judgment upon proper showing of the lack of a genuine, triable issue of material fact."[34] However, "[w]hen a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue."[35]

Here, MUSIC relies on the Exclusion to avoid its coverage obligations to Allied and, therefore, bears the burden of establishing that the Exclusion applies to negate all potential for coverage. But MUSIC cannot meet this heavy burden and summary judgment is improper because the Exclusion is ambiguous as a matter of law. Specifically, the meaning of the phrase "all locations" in the Exclusion is uncertain or, alternatively, reasonably susceptible to more than one meaning.

### B.    The Duty to Defend Standard

The issue presented is whether the allegations asserted in the Underlying Lawsuit establish that a potential for coverage exists and, thus, whether MUSIC has a duty to defend Allied in the Underlying Lawsuit. Texas courts apply the "eight corners" rule to determine whether an insurer

---

[32] *See Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998); *Great Am. Ins. Co. v. AFS/IBEX Fin. Services, Inc.*, No. CIV. A. 307-CV-924-O, 2008 WL 2795205, at *10 (N.D. Tex. July 21, 2008); *see also* TEX. INS. CODE ANN. § 554.002.

[33] *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848 (5th Cir. 2014).

[34] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[35] *Int'l Ins. Co. v. RSR Corp.*, No. CIV.A. 300CV0250P, 2002 WL 493121, at *6 (N.D. Tex. Mar. 27, 2002) (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)).

has a duty to defend.[36] The Supreme Court of Texas has explained the "eight corners" rule in the following way:

> Where the [complaint] does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.[37]

Citing the provision above, the Fifth Circuit has recognized that the "eight corners" rule is "very favorable to insureds because doubts are resolved in the insured's favor."[38] While courts cannot read facts into pleadings or imagine factual scenarios, they "may draw inferences from the petition that may lead to a finding of coverage."[39] "Even if the plaintiff's complaint alleges multiple claims or claims in the alternative, some of which are covered and some of which are not, the duty to defend arises if at least one of the claims is facially within the policy's coverage."[40] The Fifth Circuit has offered insurers the following advice: "**When in doubt, defend**."[41]

Because it is possible to determine from the face of the First Amended Petition in the Underlying Lawsuit that MUSIC owes a defense under the "eight-corners" rule, MUSIC's Motion should be denied.

---

[36] *See Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009); *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528–35 (5th Cir. 2004); *Indian Harbor Ins. Co. v. KB Lone Star, Inc.*, No. H-11-CV-1846, 2012 WL 3866858, at *5 (S.D. Tex. Sept. 5, 2012); *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008); *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006).

[37] *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

[38] *See Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008).

[39] *Id.* (citations omitted).

[40] *Colony Nat'l Ins. Co. v. United Fire & Cas. Co.*, 677 F. App'x 941, 944 (5th Cir. 2017) (emphasis added) (quoting *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995)).

[41] *Gore Design*, 538 F.3d at 369 (emphasis added).

## C.    A Duty to Defend is Owed under the Policy

As outlined below, the allegations in the Underlying Lawsuit satisfy the requirements of the insuring agreement in the Policy. Additionally, the Exclusion, which is ambiguous as a matter of law, does not apply to negate the duty to defend. Because a duty to defend is owed, a determination of the duty to indemnify is not ripe. Accordingly, MUSIC's Motion, which is premised entirely on the Exclusion, should be denied. In addition, Allied also is entitled to summary judgment on its own Cross-Motion for Summary Judgment regarding the duty to defend, including with respect to Allied's claims for declaratory judgment and breach of contract.[42] Allied is entitled to summary judgment on this Cross-Motion because there is no genuine issue of material fact that the Policy provides coverage for the claims asserted against Allied in the Underlying Lawsuit, and MUSIC has failed to meet its burden to establish that any exclusions apply.[43]

### 1.    Coverage is available under the Policy for the claims asserted against Allied in the Underlying Lawsuit.

The Policy's insuring agreement provides that MUSIC will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' […] to which this insurance applies [and that MUSIC] will have the right ***and duty to defend the insured*** against any 'suit' seeking those damages."[44] The Policy applies to any "bodily injury" that is caused by an "occurrence," that takes place in the "coverage territory," and that occurs during the policy period.[45] Pursuant to the plain terms of this agreement, there is no genuine dispute as to any

---

[42] Pending before this Court is Allied's Motion for Leave to File its Second Amended Answer and Original Counterclaims. (ECF No. 45). The amended pleading clarifies Allied's prior asserted declaratory judgment and breach of contract claims. *See* Allied's First Amended Answer at 6 (ECF No. 32).

[43] At this time, Allied only seeks a determination from the Court that coverage is available under the Policy and will submit evidence of its damages either through a separate motion (to the extent the carriers do not raise fact issues regarding the damages) or at trial.

[44] App. to Pl.'s Mot. Summ. J. at 55 (ECF No. 38) (emphasis added).

[45] *Id.*

---

material fact that MUSIC owes a duty to defend Allied from the claims asserted against it in the Underlying Lawsuit. As a result, Allied is entitled to summary judgment on its Cross-Motion for Summary Judgment.

### a.     Allied qualifies as an "Insured" under the Policy.

In the Policy, "insured" is defined to mean "any person or organization qualifying as such under Section II - Who is an Insured."[46] Pursuant to an endorsement to the Policy titled "Limited AI  - Primary Non-Contributory – Waiver of Subrogation," this "Who is an Insured" section is amended to include as an additional insured "any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy."[47] "Such person or organization is an additional insured only with respect to liability for 'bodily injury' or 'property damage' caused, in whole or in part, by: [] [y]our ongoing operations."[48]

Here, it is undisputed that the contract between Allied and USAPD required USAPD to obtain commercial general liability insurance coverage naming Allied as an additional insured.[49] In addition, the underlying plaintiff asserts claims against Allied and USAPD in the Underlying Lawsuit such that the "bodily injury" at issue is alleged to have been caused, in whole or in part, by USAPD during its ongoing operations.[50] Therefore, Allied qualifies as an additional insured and, in turn, as an "insured" under the Policy's "Who is an Insured" provision.[51]

---

[46] *Id*. at 63.

[47] *Id*. at 50.

[48] *Id*. "Your" means the Named Insured, USAPD. *Id.* at 55.

[49] *Id*. at 97; *see also* Pl.'s Mot. Summ. J. Br. at 6 (ECF No. 37).

[50] *See, e.g.*, App. to Pl.'s Mot. Summ. J. at 6–10 (ECF No. 38) (asserting claims of negligence against both Allied and USAPD).

[51] In its brief, MUSIC does not appear to dispute this fact. *See generally* Pl.'s Mot. For Summ. J. Br. (ECF No. 37).

        b.      **The claims asserted against Allied in the Underlying Lawsuit are for damages because of a "bodily injury" that was caused by an "occurrence" and took place in the "coverage territory" during the policy period.**

The Policy broadly defines "bodily injury" to mean any "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time" and "coverage territory" to include "the United States of America (including its territories and possessions)[.]"[52] "Occurrence" is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[53] Finally, the Policy's policy period is November 2, 2021 to November 2, 2022.[54]

In the Underlying Lawsuit, the underlying plaintiff seeks to recover damages because of a "bodily injury" as this term is broadly defined by the Policy. Specifically, in the Underlying Lawsuit, the underlying plaintiff seeks to recover damages for reasonable and necessary medical costs, physical pain and suffering, mental anguish, and other damages.[55] Such claims constitute claims for damages because of "bodily injury."[56] The asserted "bodily injury" also was caused by an "occurrence." The underlying plaintiff's claims against Allied are premised, in part, on allegations of negligent hiring, training, and supervision.[57] Based on the same policy language present in the Policy here, the Supreme Court of Texas has held that claims against an insured for negligent hiring, training, and supervision qualify as an "occurrence" regardless of whether the

---

[52] App. to Pl.'s Mot. Summ. J. at 67.

[53] *Id*. at 69.

[54] *Id*. at 22, 23.

[55] *See id*. at 6–7, 12–13, 15.

[56] *See GuideOne Elite Ins. Co.*, 197 S.W.3d at 311 (holding that "bodily injury" defined in the same way is commonly understood to be a consequence of sexual assault and that an insurer had a duty to defend based on pleadings that sought damages for emotional and psychological injuries).

[57] *See* App. to Pl.'s Mot. Summ. J. at 6–7 (ECF No. 38).

underlying intentional conduct is excluded from coverage with respect to the alleged perpetrator.[58] Because Allied did not expect the "bodily injury" at issue to occur, it is an "occurrence" from its standpoint. Finally, it is undisputed that the alleged "bodily injury" took place in the "coverage territory" and during the policy period, because the injuries allegedly occurred on April 2, 2022, in Fort Worth, Texas.[59]

**2.    The Exclusion does not negate the duty to defend because it is ambiguous as a matter of law.**

The focus of MUSIC's Motion is the Exclusion, which it contends bars all coverage for Allied because the Underlying Plaintiff alleges that O.C. was sexually assaulted at a location in a secluded park in Fort Worth. That interpretation does not adhere to well-established laws of contract interpretation applicable to insurance policies. Instead, the Exclusion is ambiguous as a matter of law and does not apply.

**a.    The Endorsement is ambiguous as a matter of law, because the meaning of "all locations" is uncertain or doubtful.**

Texas courts interpret insurance policies according to the rules of contract interpretation.[60] One such rule is that, when reviewing policy language, courts must "take care to ensure that no provision is rendered meaningless."[61] Another is that policy language should not be read in isolation, but instead examined within the context of the entire agreement and harmonized with the rest of the policy language.[62] Along the same vein, "[u]nder well established principles of

---

[58] *See King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 188–93 (Tex. 2002) (holding that the insured's standpoint controls in determining whether there has an "occurrence" that triggers the duty to defend).

[59] App. to Pl.'s Mot. Summ. J. at 5 (ECF No. 38).

[60] *Sustainable Modular Mgmt., Inc. v. Travelers Lloyds Ins. Co.*, No. 3:20-CV-1883-D, 2022 WL 2134022, at *13 (N.D. Tex. June 14, 2022) (citing *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 291 (5th Cir. 2005)).

[61] *Manny G. Motors, LLC v. Universal Underwriters Ins. Co.*, No. 5:17-CV-565-OLG, 2018 WL 2251366, at *3 (W.D. Tex. Jan. 26, 2018) (citing *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017)).

[62] *Id.*; *Kent Distributors, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. MO:22-CV-00221-DC-RCG, 2023 WL 6536245, at *3 (W.D. Tex. Aug. 3, 2023) ("When possible, [courts] must harmonize all of the provisions with

contract law, [courts] must presume that contracting parties intended that the same words appearing in different clauses be given a meaning consistent with each other."[63]

"Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered."[64] "If the contract's meaning is uncertain and doubtful, or it is reasonably susceptible to more than one meaning, it is ambiguous."[65] With respect to insurance contracts, ambiguous terms are construed strictly against the insurer in favor of coverage.[66]

Here, the Exclusion states in three (3) separate places that its application is limited to specific locations. In the first line of its body, it states "[t]his insurance does not apply to locations specified in the above Schedule [...] ."[67] Then, it expressly states that "[t]his exclusion applies to all locations if the above Excluded Locations Schedule is left blank."[68] Finally, the Excluded Locations Schedule states that, "[i]f no locations are specified below, the Assault or Battery Exclusion applies to ALL locations."[69] Reading these provisions together, the Endorsement only limits insurance coverage with respect bodily injuries that occur at "all locations." However, the meaning of "all locations" in this context is unclear or doubtful. MUSIC's apparent interpretation

---

reference to the entire agreement; no single provision should be read as controlling.") (citing *Cent. Mut. Ins. Co. v. Reliance Prop. Mgmt., Inc.*, No. 05-21-00071-CV, 2022 WL 1657031, at *4 (Tex. App.—Dallas May 25, 2022, pet. denied)).

[63] *See Royal St. Louis, Inc. v. United States*, 578 F.2d 1017, 1020 (5th Cir. 1978) (La. law) (citations omitted).

[64] *Utica Mut. Ins. Co. v. Hanover Ins. Co.*, No. 3:23-CV-2306-D, 2024 WL 4703089, at *5 (N.D. Tex. Nov. 5, 2024) (citations omitted).

[65] *Id.*

[66] *See, e.g.*, *Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 235, 331 (5th Cir. 2022) (noting that, when an insurance policy "is susceptible to more than one construction, it generally is construed strictly against the insurer and liberally in favor of the insured").

[67] App. to Pl.'s Mot. Summ. J. at 42 (ECF No. 38).

[68] *Id.*

[69] *Id.* (capitalization in original).

of the phrase—to mean every geographical location included in the world, including the secluded park at issue—is not reasonable because this would violate established rules of contract interpretation.

First, such an interpretation would render all the Policy language quoted above meaningless. If the Exclusion truly was intended to apply regardless of where a "bodily injury" arising out of an "assault" or "bodily" occurred, there would be no need for the Exclusion limiting language with respect to specific locations at all. Instead, the Exclusion could simply say "[t]his insurance does not apply for [*sic*] 'bodily injury' […] caused by, arising out of, resulting from, or in any way related to an 'assault' or 'battery' […]." In fact, MUSIC could have utilized any number of forms that do not include any confusing limiting language.[70]

Second, MUSIC's proposed interpretation also runs counter to other express language in the Exclusion itself. The sentence immediately following the Exclusion's statement that "[t]his exclusion applies to all locations if the above Excluded Location Schedule is left blank" provides: "*Further*, this exclusion *also applies* to *all locations* specified in the Limited Assault or Battery Coverage endorsement if also attached to the policy."[71] Although the referenced Limited Assault or Battery Coverage endorsement (the "Limited Endorsement") is not attached to the Policy, the fact that the Exclusion states it "further" applies to those additional "locations" specified in this Limited Endorsement means that "all locations" in the preceding sentence cannot mean literally any geographical area. Otherwise, the reference to these additional locations listed in the Limited

---

[70] *See, e.g.*, *Tasacom Real Estate, LLC v. Associated Indus. Ins. Co. Inc.*, Civ. A. No. 3:23-CV-1687-X, 2024 WL 3635519, *2 (N.D. Tex. June 18, 2024) (Starr, J.) (addressing an exclusion barring coverage for claims arising out of assault or battery without regard to locations of any kind); *American W. Home Ins. Co. v. Israel*, 747 F. Supp. 2d 785, 788 (S.D. Tex. 2010) (addressing policy that excluded "bodily injury" "[a]rising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery").

[71] *I* App. to Pl.'s Mot. Summ. J. at 38 (ECF No. 38) (emphasis added).

Endorsement would be superfluous and rendered meaningless. As a result, MUSIC's apparent interpretation of "all locations" as being literally any geographic location around the world is unreasonable.

Again, neither "location" nor "all locations" is defined anywhere in the Policy.[72] As a result, because "all locations" cannot literally mean any geographic location without rendering other language in the Exclusion meaningless, and given that this phrase is undefined, that interpretation is not a reasonable interpretation of the policy terms. Instead, the Exclusion is ambiguous because it is unclear or doubtful as to what exact locations it applies. Accordingly, under prevailing Texas law, the phrase, which is part of an exclusionary provision, must be construed narrowly and in favor of coverage such that the exclusion does not apply to negate the duty to defend or indemnify.[73]

> **b.      Further, a reasonable interpretation is that it only applies to limit coverage with respect to bodily injuries that occur at USAPD's Corporate Office such that the exclusion does not apply.**

In addition to the meaning of the Exclusion's reference to "all locations" being unclear, it is reasonable to interpret this language as only limiting coverage with respect to bodily injuries that occur at the location or locations specified in the Declarations. In the Declarations, the only location specified is USAPD's Corporate Office. In the context of insurance policies, "when a policy exclusion is subject to two or more reasonable interpretations, 'the Court must adopt the construction urged by an insured as long as the construction is reasonable, even if the construction

---

[72] *See id.* at 67–70 (Section V. Definitions of the Policy).

[73] *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848 (5th Cir. 2014).

urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'"[74]

As discussed above, the Exclusion's statement that it applies to "all locations" cannot literally mean any geographical area in the coverage territory because that interpretation would render language in the Exclusion meaningless, *i.e.*, the Exclusion's subsequent sentence that the Exclusion *also* applies to those additional locations listed in the Limited Endorsement. Instead, the only way to read this first sentence in harmony with the second is to interpret the phrase "all locations" in the first to be referring to those "locations" listed elsewhere in the Policy.

Notably, the Exclusion's "Excluded Location Schedule" consists of a table that permits locations to which the Exclusion applies to be listed by "Loc. #" and "Address."[75] As a result, the Exclusion's statement that, if the Schedule is blank, it applies to "all locations" can reasonably be interpreted to mean that if the Schedule is blank, the Exclusion applies to those numbered locations and addresses listed elsewhere in the Policy. The Policy Declarations are the *only* other place in the entire Policy that contains a list of numbered locations and addresses similar to the Excluded Location Schedule. The Declarations list the premises owned, rented, or occupied by USAPD by location number and address and lists only one location, USAPD's Corporate Office, as "Loc. No. 001."[76] Therefore, when the Exclusion's application to "all locations" is not read in isolation, but rather in harmony with other policy language, a reasonable interpretation is that the Exclusion only limits coverage with respect to bodily injuries that occur at the locations listed in the Declarations—USAPD's Corporate Office.

---

[74] *AFS/IBEX Fin. Servs.*, 2008 WL 2795205, at *5 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991)); *Kent Distributors, Inc.*, 2023 WL 6536245, at *3.

[75] App. to Pl.'s Mot. Summ. J. at 38 (ECF No. 38).

[76] *Id.* at 33.

Interpreting the Exclusion's application to "all locations" as being a reference to the Declarations Locations is also reasonable in light of the surrounding facts and circumstances. Although the parol evidence rule prohibits introducing evidence of the parties' intentions to create an ambiguity, courts may still consult "surrounding facts and circumstances" to "provide context that elucidates the meaning [of contract words] employed."[77] Here, it is undisputed that USAPD's business is providing security services,[78] and the performance of such services logically may often involve "bodily injuries" resulting from "assaults" or "batteries," as those terms are so broadly defined by the Exclusion. In this context, it makes sense than an assault and battery exclusion in a commercial general liability policy purchased by a security service provider such as USAPD would be limited to excluding coverage for bodily injuries that occur at locations over which USAPD exercises a greater amount of control (*i.e.*, properties it owns, rents, or occupies). Reasonably, it could also apply to locations where USAPD may provide security services at which excluded bodily injuries may often occur. Applying it to all geographical locations in the coverage territory, however, including locations (like the secluded park at issue here) at which USAPD has *no* control makes little sense. Simply put, because the alleged assault did not occur at USAPD's Corporate Office, or even at a location at which it was providing services, the Exclusion is inapplicable.

In sum, a reasonable interpretation of the Exclusion's statements that it applies to "all locations" is that it only excludes coverage with respect to bodily injuries that occur at any of the listed Declaration Locations—which is limited to USAPD's Corporate Office. As a result, even if MUSIC's interpretation that "all locations" means any geographical location is reasonable, which

---

[77] *Charter Commc'n, Inc. v. Prewitt Mgmt., Inc.*, No. 1:16-CV-1268-LY, 2023 WL 3859027, at *4 (W.D. Tex. Apr. 28, 2023) (citing *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764 (Tex. 2018)).

[78] *See* Pl.'s Mot. Summ. J. Br. at 4 (ECF. No. 37).

Allied disputes, because the Exclusion is subject to another reasonable interpretation, it is ambiguous as a matter of law, and Allied's construction must be adopted.[79] Because the exclusion does not apply, a duty to defend is owed.

**D.    The Duty to Indemnify is not Ripe**

Under well-established Texas law, where a duty to defend exists, a ruling on the duty to indemnify is premature.[80] Here, the foregoing establishes that the insuring agreement is satisfied and no exclusion applies to negate the defense obligation; thus, a duty to defend is owed and the duty to indemnify is not justiciable.

MUSIC contends that no defense or indemnity coverage is available to Allied based on the application of the Exclusion and seeks a finding on both the defense and indemnity obligation based on the Supreme Court of Texas' holding in *Farmers Texas County Mutual Insurance Co. v. Griffin*. Allied does not dispute that, in the *Griffin* case, the Supreme Court held that the duty to indemnify *can* be ripe when a pleading negates "any possibility" that the insurer *will ever have* an obligation to indemnify. As discussed herein, whether the Exclusion applies to "bodily injury" occurring at USAPD's Corporate Office (the only "location" otherwise identified in the Policy that could satisfy the "all locations" langauge) or at locations where USAPD perform security services work (*e.g.*, the bus station), it does not apply to the claims asserted in the Underlying Lawsuit because the allegations are that C.O. was assaulted in a park in Fort Worth.[81] As such, a duty to

---

[79] *AFS/IBEX Fin. Servs.*, 2008 WL 2795205, at *5 ("Where an exclusionary clause is subject to two or more reasonable interpretations, the Court must adopt the construction urged by an insured as long as the construction is reasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.").

[80] *See, e.g.*, *Century Sur. Co. v. Club Adventure Learning Ctr. LLC*, Cause No. EP-22-CV-213-KC, 2023 WL 3575647, at *11 (W.D. Tex. May 22, 2023) ("Here, the duty to defend is not negated, so the duty to indemnify is not yet ripe.") (citing *Penn-Am. Ins. Co. v. Tarango Trucking, LLC*, 30 F.4th 440, 448 (5th Cir. 2022)).

[81] App. to Pl.'s Mot. For Summ. J. at 5 (ECF No. 38).

---

defend is owed, and therefore, on its face, *Griffin* does not apply. Any ruling on the duty to indemnify is premature because the Underlying Lawsuit remains pending. Thus, MUSIC is not entitled to a ruling on the duty to indemnify.

**E.    MUSIC Violated the Prompt Payment of Claims Act**

The Prompt Payment of Claims Act, codified within the Texas Insurance Code, states that an insured is entitled to additional damages when an insurer improperly refuses or delays payment of a claim.[82] The Supreme Court of Texas has held that an insurer's breach of the duty to defend constitutes a *per se* violation of the Prompt Payment of Claims Act because defense coverage is akin to a first-party claim.[83] The Fifth Circuit recently reaffirmed that the Prompt Payment of Claims Act is a "strict liability" statute.[84]

As such, because MUSIC breached its contract and caused Allied to incur its own defense fees and expenses, Allied is entitled to recovery of those damages plus penalty interest on that amount at the rate of 18% per annum.[85] In addition, Allied is entitled to recovery of its attorneys' fees incurred in pursuing its right to a defense in connection with the Underlying Lawsuit.[86]

---

[82] TEX. INS. CODE ANN. § 542.060.

[83] *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 17 (Tex. 2007) (holding that "[t]he claim for defense costs then is a first-party claim because the insured is the only party who will suffer the loss or benefit from the claim").

[84] *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 741 (5th Cir. 2023).

[85] TEX. INS. CODE ANN. § 542.060.

[86] *Id.*

## F.      Attorneys' Fees under the CPRC.

In the alternative, in the event this Court finds that the Prompt Payment of Claims Act does not apply, Allied is entitled to judgment for recovery of its attorneys' fees and expenses incurred in pursuit of coverage pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code.[87]

## V.      CONCLUSION AND PRAYER

In sum, because the Exclusion's application is expressly limited to "all locations" and this phrase is unclear and subject to more than one reasonable interpretation, the Exclusion is ambiguous as a matter of law. Based on Allied's reasonable explanation of the meaning of the Exclusion, MUSIC's Motion must be denied. Further, Allied is entitled to summary judgment on this Cross-Motion because there is no genuine issue of material fact that the Policy provides coverage for the claims asserted against Allied in the Underlying Lawsuit and MUSIC has failed to meet its burden to establish that any exclusions apply.

Respectfully submitted,

By: _/s/ Douglas P. Skelley_
    Douglas P. Skelley
    State Bar No. 24056335
    doug@shidlofskylaw.com
    SHIDLOFSKY LAW FIRM PLLC
    7200 N. Mopac Expy., Ste. 430
    Austin, Texas 78731
    512-685-1400
    866-232-8710 (Fax)

    -and-

---

[87] TEX. CIV. P. & REM. CODE § 38.001 (allowing for the award of attorneys' fees with respect to breach of a written contract).

/s/ Jillian J. Keith.
Jillian J. Keith
State Bar No. 24013671
Jillian.Keith@wilsonelser.com
Joshua D. Hamm
State Bar No. 24098885
Joshua.Hamm@wilsonelser.com
WILSON ELSER MOSKOWITZ EDELMAN &
DICKER, LLP
901 Main Street, Suite 4800
Dallas, Texas 75202-3758
(214) 698-8000
(214) 698-1101 (Fax)

**ATTORNEYS FOR DEFENDANT
UNIVERSAL PROTECTIVE SERVICE,
LP D/B/A ALLIED UNIVERSAL
SECURITY SERVICES**

## CERTIFICATE OF SERVICE

I hereby certify that, on this 31st day of January 2025, a true and correct copy of the foregoing was filed via the Court's CM/ECF system, which will forward a copy of same to all counsel of record pursuant to the Federal Rules of Civil Procedure.

/s/ Douglas P. Skelley
Douglas P. Skelley